HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DOMENIC J FALCONE,

                Plaintiff,

    v.

ALTAROCK ENERGY INC.,

                Defendant.

CASE NO. C16-622 RAJ

ORDER

    This matter comes before the Court on Plaintiff's Motion to Enforce Settlement Agreement and Reset Case Deadlines. Dkt. # 32. Defendant opposes the Motion. Dkt. # 35. For the reasons that follow, the Court **GRANTS** the Motion.

**I.    BACKGROUND**

    This lawsuit arises from the parties' dispute over Plaintiff's consulting agreement with Defendant, the facts of which are familiar to the parties. *See* Dkt. # 30 (Order on Motion for Summary Judgment).

    In April 2017, the parties engaged in settlement negotiations to effectively and efficiently resolve the dispute. Plaintiff argues that a settlement was reached in early June 2017. Defendant counters that it did not agree to settle the matter and wishes to

ORDER- 1

proceed with the litigation. Plaintiff is now before the Court seeking enforcement of the alleged settlement agreement reached in June 2017.

## II. LEGAL STANDARD

The Court has plenary power to enforce agreements to settle litigation pending before it. *City Equities Anaheim v. Lincoln Plaza Dev. Co. (In re City Equities Anaheim, Ltd.)*, 22 F.3d 954, 957 (9th Cir. 1994). A settlement agreement is a contract and thus, this Court relies on Washington contract law to determine whether an enforceable settlement agreement exists. *Jeff D. v. Andrus,* 899 F.2d 753, 759 (9th Cir.1989). To be bound by an agreement, the parties must objectively manifest their mutual assent to the essential terms. *Yakima Cnty. Fire Prot. Dist. No. 12 v. City of Yakima,* 858 P.2d 245, 255 (Wash. 1993). A party manifests assent to an agreement when the reasonable meaning of a person's words and acts, notwithstanding any subjective reservations of intent, indicates assent. *City of Everett v. Sumstad's Estate,* 631 P.2d 366, 367 (Wash. 1981). The stated terms must be complete and definite enough for the Court to ascertain their meaning and to fix the parties' contractual liabilities. *Keystone Land & Dev. Co. v. Xerox Corp.,* 94 P.3d 945, 949 (Wash. 2004). Under Washington law, a contract is binding on the parties when the intention of the parties is plain and the parties or their counsel agree on the terms of the contract even if one or both parties contemplated signing a more formal writing in the future. *Veith v. Xterra Wetsuits, L.L.C.,* 183 P.3d 334, 337 (Wash. Ct. App. 2008); *Morris v. Maks,* 850 P.2d 1357, 1359 (Wash. Ct. App. 1993).

## III. DISCUSSION

A. Binding Settlement

Plaintiff contends that a binding settlement was agreed to on June 8, 2017 when he accepted Defendant's offer. Dkt. ## 32, 33-8 at 2. The Court agrees.

On April 19, 2017, Plaintiff sent a settlement offer to Defendant. Dkt. # 33-2 at 2. Defendant rejected the offer but submitted a counteroffer. Dkt. # 33-3 at 2. Plaintiff declined the counteroffer. Dkt. # 33-4.

In May 2017, the parties continued to negotiate a settlement. On May 31, 2017, Defendant provided Plaintiff with a final offer to settle the matter. Dkt. # 33-7. The offer stated that it would expire on Friday, June 2, 2017. *Id.* Plaintiff again countered the offer, but, on June 7, 2017, Defendant stated that it would keep "its offer at $150,000 to settle this case with Mr. Falcone, which will expire tomorrow." Dkt. # 33-8. On June 8, 2017, Plaintiff accepted Defendant's offer. Dkt. # 33-8 at 2 ("Don Falcone has authorized me to accept AltaRock's settlement offer of $150,000."). Defendant's counsel acknowledged receipt of Plaintiff's acceptance. *Id.*

Plaintiff sent a draft settlement agreement to Defendant's counsel. The draft agreement included robust claim release language, and memorialized the parties' agreement that Plaintiff would dismiss his lawsuit in exchange for $150,000. Dkt. # 33-9. Defendant did not respond with objections to the draft language. On June 19, 2017, Defendant's counsel informed Plaintiff that she was "waiting on an understanding of how soon the funds can be released after the agreement is executed. As soon as I can confirm that, we will have a draft back to you." Dkt. # 33-11.

Relying on the settlement agreement, the parties missed several of the Court's pretrial deadlines. Dkt. # 32 at 5. On June 23, 2017, Defendant "made the decision to proceed with litigation" and refused to sign the draft settlement agreement. Dkt. # 32-12 at 2.

Defendant claims that there is no mutual assent because: (1) the claim release language in the draft agreement is not satisfactory; (2) there is no language confirming that all obligations arising under the disputed consulting agreement are terminated; and (3) there is no language confirming "the time upon which payment would be made by

1 AltaRock." Dkt. # 35 at 5. The Court finds each of these reasons are unsupported by the record.

First, the draft agreement included robust claim release language. Dkt. # 33-9 at 4. Defendant offers no support for its argument that there is a material disagreement as to the essential terms of the claim release section.

Second, the record supports Plaintiff's assertion that the disputed consulting agreement between the parties was already terminated. Once the parties settle this lawsuit, there are no remaining obligations under the previous consulting agreement. Moreover, Plaintiff understands that the parties will not enter into a new consulting contract. *See* Dkt. # 33-3 at 2 ("Furthermore, as a matter of prudent business practices, AltaRock cannot enter into another business relationship with Mr. Falcone given the nature of this lawsuit."). That the draft settlement agreement did not specifically address the termination of the disputed consulting agreement is immaterial for the settlement agreement to take effect because this term is inherent in the settlement.

Third, the draft settlement agreement contemplated payment within five days of the parties signing the agreement. Dkt. # 33-9 at 3. Even if Defendant did not agree to this specific time-period, it is presumed that payment would be made within a reasonable period. *Foelkner v. Perkins*, 85 P.2d 1095, 1098 (Wash. 1938) ("The fact that an agreement does not fix a definite time when money should be returned, advanced, or repaid would not make the contract fatally defective for uncertainty or indefiniteness. The general rule is that, where a thing is to be done, and no time is fixed, it will be presumed that a reasonable time was intended.") (internal quotations and citations omitted). Therefore, the Court finds that the record supports mutual assent to the material terms of settlement.

B. State Procedural Rules

A federal court sitting in diversity applies state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Erie*

*R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Defendant cites Washington Civil Rule 2A and RCW 2.44.010(1) as rules that bind this Court. Dkt. # 35 at 3. The Court applies the Federal Rules of Civil Procedure to non-substantive issues; it is not bound by the Washington Superior Court Civil Rules, including Washington Civil Rule 2A. *Cuprite Mine Partners LLC v. Anderson*, 809 F.3d 548, 554 (9th Cir. 2015) ("The 'procedural aspects of summary judgment' are governed by the Federal Rules of Civil Procedure, and 'the law of the forum controls the substantive issues.'") (citations omitted).

The Ninth Circuit has not determined whether RCW 2.44.010 is a substantive rule that federal courts must apply when analyzing the enforceability of settlement agreements. *Butler v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 528 F.2d 1390, 1391 (9th Cir. 1975) ("**If** R.C.W. 2.44.010 does apply to federal court proceedings by way of limiting the authority of an attorney operating within the geographic boundaries of the state of Washington, then the statute was satisfied when the attorney signed the affidavit, even if the statute had not been satisfied prior to that time.") (emphasis added). Moreover, this district has dealt with similar circumstances to the one at hand and has enforced settlement agreements where RCW 2.44.010 was not satisfied. *See, e.g.*, *Daroudi v. Bank of America*, No. C13-1561RSL, 2014 WL 1670146 (W.D. Wash. Apr. 28, 2014); *Kruger v. Credit Intern. Corp.*, No. C10-1374-RSM, 2012 WL 1534023 (W.D. Wash. Apr. 30, 2012). Washington courts have analyzed settlement agreements under "general principals of contract law" and looked to "the underlying purpose" of RCW 2.44.010—rather than its exact terms—to decide whether to enforce such agreements. *See Morris*, 850 P.2d at 1359. The weight of both state and federal jurisprudence suggests that RCW 2.44.010 is a procedural rule rather than a substantive one, and therefore does not bind this Court when it is sitting in diversity. To the extent that Defendant argues against the enforceability of the settlement agreement based upon state procedural rules, this Court disagrees.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to the extent that the settlement agreement is enforceable. Dkt. # 32. However, the Court does not find this situation to be one where an award of attorneys' fees is appropriate and therefore declines Plaintiff's request for sanctions.

The parties must provide the Court with a proposed judgment for the Court to enter. If the parties cannot agree on the proposed judgment language, they may file separate judgments for the Court to consider. The proposed judgment(s) must be filed no later than seven (7) days from the date of this Order.

Dated this 16th day of January, 2018.

The Honorable Richard A. Jones
United States District Judge